# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JONATHAN MACIAS, | :<br>:<br>: |
| Plaintiff | :<br>: |
| | : Civil Action No. 15-3730 |
| v. | :<br>: |
| THE SCHOOL DISTRICT OF THE CITY OF ALLENTOWN; QUAAN WHITE; RICHARD E. GAVORNIK; AND ANTHONY S. WARD, | :<br>:<br>:<br>:<br>: |
| Defendants | : |

**Henry S. Perkin, M.J.**                                                                     **November 14, 2017**

## MEMORANDUM

This matter is before the Court on Defendant Allentown School District's Motion for Summary Judgment, which motion was filed March 15, 2017. Plaintiff's Brief in Opposition to Defendant, The School District of the City of Allentown's, Motion for Summary Judgment was filed on April 15, 2017. The Reply Brief of Allentown School District in Support of Motion for Summary Judgment was filed on May 1, 2017. Having reviewed and considered the contentions of the parties, the Court is prepared to rule on this matter.

## Procedural History

Plaintiff Jonathan Macias ("Macias") initiated this matter by filing a Complaint in the Lehigh County Court of Common Pleas against Defendants Anthony Ward ("Ward"), Quaan White ("White"), Richard Gavornik ("Gavornik"), and the School District of the City of Allentown ("School District"). This matter was subsequently removed to this Court by the

School District. Macias alleges that on March 17, 2014, he was attacked by three fellow students on William Allen High School property, and that he suffered a broken jaw as a result.

In Count Eight of the Amended Complaint, Macias sets forth a Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging that the School District violated his constitutional right to bodily integrity because the School District knew about past violent assaults committed by its students, including the three individual defendants, and concealed these past assaults in order to avoid public scrutiny, which directly led to the attack against him. The parties engaged in discovery and this Court, by virtue of its September 28, 2016 Order, directed that all dispositive motions (including a separate, short and concise statement of material facts) be filed on or before March 15, 2017. The School District now moves this Court to grant summary judgment in its favor, and dismiss Count Eight of the Amended Complaint, the only claim asserted against the School District. The School District's motion is now ripe for disposition.

**Facts**

Based upon the record papers, exhibits, depositions, and the parties' statements of the facts, the pertinent facts to this Court's determination are as follows:

Jonathan Macias (hereafter "Macias"), now 21 years old, graduated, in 2014, from William Allen High School (hereafter "Allen" or "School") located in the School District of the City of Allentown (hereafter "School District"), where Kenneth Fritz (hereafter "Fritz") was the Assistant Principal. Sometime on February 26, 2014, a security guard at the school saw Macias in the hallway and had a verbal altercation with Macias. Shortly after Macias and the security guard crossed paths, Anthony Ward (hereafter "Ward") proceeded to smack or slap Macias in the

head with an open palm. Prior to the February 26, 2014, Macias knew of Ward only through seeing Ward in an emotional support class that both Macias and Ward attended.

Macias reported to Fritz that Ward had smacked him. For Macias's safety, Allen's security officers took Macias to the office and called Macias's parents to come pick him up. Fritz asked Macias's parents to pick him up in order to avoid another altercation outside of school. Once Macias left the premises, Fritz conducted an investigation of the altercation that took place on February 26, 2014. The School District responded to the incident by giving Ward two days of out-of-school suspension and reporting the incident to the police.

The February 26, 2014 incident was documented in Allen's Sapphire Student Information System (hereafter "Sapphire"). Sapphire is a web-based school-wide system for documenting and compiling student disciplinary incidents. It tracks frequent and habitual offenders.

Macias requested to meet with Fritz on March 4, 2014. During Fritz and Macias's meeting, Macias claimed that after the February 26, 2014 incident, Ward approached Macias in the hallway about fighting and made threats to Macias on Facebook. Fritz proceeded to contact Macias's mother about Macias's claims concerning Ward's threats and documented the meeting in Sapphire. On the same day, Ward was excused from class for insubordination towards a teacher[1]. On March 5, 2014, Fritz met with Ward to discuss the alleged threats made by him

---

[1] On March 4, 2014, Ward was in an altercation with a teacher during class, which was documented in the Sapphire System, by the teacher, as:

> Antony [Ward] came into class on his cell phone, he was redirected to put the phone away and follow directions to complete assignment on the board. He was then up and out of his seat multiple times and still using his cell phone. When directed for the fourth time I walked over and said "you need to put your phone away and read your book', Antony then turned and call me a "dickhead" and turned back around continuing to use his phone. As I got to his desk I reached for the phone and he jerked back pulling me towards him. He then jumped up and said that if I get in his face he was going to "Fuck me up" and that to "don't

towards Macias. Ward denied making the comments to Macias, and Ward further claimed that Macias was making threatening comments to Ward in school and on Facebook. Fritz then spoke to School Resource Officer Jeremy Moll (hereafter "Moll") concerning the allegation of threats between Macias and Ward. Macias avers that the threats continued after the March 5, 2014 meeting between Ward and Fritz.

On March 17, 2014, a School District administrator stopped Macias in the hallway, on the first floor of the Allen main building, and, after speaking with Macias concerning Macias's missing an art class, gave Macias a pass to return to class. As Macias walked from the first floor up the stairs, he noticed Ward and Defendants: Quaan White (hereafter "White") and Richard Gavornik (hereafter "Gavornik), following him. Prior to March 17, 2014, Macias had previously seen White only once at a lunch table a couple of weeks earlier. Macias had never seen Gavornik prior to March 17, 2014. After he noticed Ward, White, and Gavornik following him, Macias was stopped by a security guard who asked Macias where he was going and if he had a hall pass. Macias showed the security guard his pass and was told to proceed to class. After questioning Macias, the security guard also told Ward, White, and Gavornik to get to class. At no point during Macias's encounter with the security guard, did Macias express to the security guard that he thought he was being followed by Ward, White, and Gavornik. Both Macias and the Defendants walked up the stairwell to the second floor, where Macias was approached by Ward, White, and Gavornik, whereupon Ward struck Macias. Following the initial strike, an altercation ensued between Macias and the group. Ward struck Macias again and broke Macias's jaw.

---

ever fucking touch my phone again or I'll fuck your shit up" all while standing in an aggressive stance. I then told him to leave the room and walked behind him escorting him out of the door. He continued to make threats while walking down the hall. I followed him to make sure he was safe while in the stairway until we reached a security guard at the bottom of the stairway.

After the altercation, Macias went to class and informed his teacher that he needed to go to the nurse. A security guard escorted Macias to the nurse's office. The nurse directed Macias to call his father. The nurse attempted to inspect Macias's jaw but could not because Macias was unable to open his mouth. To stop the bleeding, the nurse gave Macias gauze to put in his mouth. Upon his arrival at Allen, Macias's father spoke with Moll, who explained that Macias was in a fight. Thereafter, an investigation was conducted by both Moll and the Allentown Police Department. Macias's father took Macias to the hospital where Macias stayed for four days as his jaw was repaired. While Macias recovered, he received homebound instruction from the School. Macias passed all of his classes and participated in the graduation ceremony. As a result of the March 17, 2014 incident with Macias, Ward, White, and Gavornik were expelled from school, reported to the police, prosecuted in the juvenile justice system, and found guilty.

**Standard of Review**

Summary judgment is appropriate where the record and evidence, taken in the light most favorable to the non-moving party, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Anderson, 477 U.S. at 249. A

factual dispute is material only if it might affect the outcome of the suit under governing law. Id. at 248.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must cite "to particular parts of materials in the record" showing that there is a genuine dispute for trial. Fed. R. Civ. P. 56(c). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex, 477 U.S. at 325). The non-moving party has the burden of producing evidence to establish prima facie each element of its claim. Celotex, 477 U.S. at 322-323. If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine dispute as to any material fact, then summary judgment is proper. Id. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987). When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' – that is, pointing out the District Court – that there is an absence of evidence to support the non-moving party's case." Jones v. Indiana Area Sch. Dist., 397 F. Supp.2d 628, 642 (W.D. Pa. 2005) (quoting Celotex, 477 U.S. at 325).

## Discussion

### State-Created Danger Claim

In order to establish a claim under Section 1983, Macias must demonstrate that a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or law of the United States. See Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (en banc). Macias's Section 1983 claim rests on the Due Process Clause of the Fourteenth Amendment and invokes its substantive component, which "protects individual liberty against

6

'certain government actions regardless of the fairness of the procedures used to implement them.'" Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). Specifically, Macias alleges that the School District violated his constitutional right to bodily integrity because the School District knew and concealed violent, assaults by the Co-Defendants; and tolerated a certain level of violence within the William Allen High School.

In Morrow v. Balaski, 719 F.3d 160 (3d Cir. 2013) (en banc), cert. denied, 134 S.Ct. 824 (2013), the United States Court of Appeals for the Third Circuit stressed that the "Supreme Court has long established that '[a]s a general matter, … a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.'" 719 F.3d at 166 (quoting DeShaney v. Winnebago Cty. Dep't of Social Servs., 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)). Nevertheless, Courts have recognized that "[i]ndividuals have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment." Phillips v. Cty. Of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citing D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1368 (3d Cir. 1992) (citation omitted)).

Macias contends that the School District is liable under the "state-created danger" theory. Under this theory, the Third Circuit has determined "that liability may attach where the state acts to create or enhance a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." Morrow, 719 F.3d at 177 (citing Kneipp v. Tedder, 95 F.3d 1199, 1205 (3d Cir. 1996)). To prevail on this theory, Macias must prove each of the following four elements:

    1) the harm ultimately caused was foreseeable and fairly direct;

7

> 2) a state actor acted with a degree of culpability that shocks the conscience;
>
> 3) a relationship between the state and the plaintiff existed such that plaintiff was foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Morrow, 719 F.3d at 177 (citing Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006) (citations and internal quotation marks omitted)). A plaintiff's failure to satisfy any of the four elements defeats his state-created danger claim. See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 914 (3d Cir. 1997) (noting the court did not need to decide whether plaintiff satisfied an element of the Kneipp test where he could not satisfy the other three). To avoid entry of summary judgment against him, Macias must present evidence which shows there is a genuine issue of material fact as to each element of his state-created danger claim. Fed. R. Civ. P. 56(c).

**Prong One: Foreseeability**

Under the first element, Macias must show the harm which befell him was "foreseeable and fairly direct." Bright, 443 F.3d at 281 (citation and internal quotation marks omitted). "Under Third Circuit jurisprudence, a harm is foreseeable when a state actor has actual awareness, based on concrete information, of a risk of harm to an individual or class of individuals such that the actor is on notice that his or her act or failure to act significantly enhances that risk of harm." Gremo v. Karlin, 363 F. Supp. 2d 771, 784 (E.D. Pa. 2005).

In Morse, the school district was not held liable because it was not foreseeable that leaving a door unlocked for a contractor would result in an unknown third party causing harm. 132 F.3d at 915-916. Unlike Morse, however, the School had concrete information that

Ward and Macias were a risk to each other as a result of their first altercation on February 26, 2014. Further, although the threats alleged in the time leading up to the second assault may not have been as concrete, the School was aware Ward and Macias still had their differences. There is no dispute that Ward and Macias had a history of altercations prior to the March 17, 2014 attack on Macias. It appears from the record, that Macias still had some concerns about Ward's behavior towards him, and vice versa. Therefore, the School had actual awareness that the February 26, 2014 dispute between Macias and Ward was not over and the two could not occupy the same space without incident.

**Prong Two: Culpability**

With respect to the second element, Macias must demonstrate that a "state actor acted with a degree of culpability that shocks the conscience." Bright, 443 F.3d at 281. "[I]n any state-created danger case, the state actor's behavior must always shock the conscience. But what is required to meet the conscience-shocking level will depend upon the circumstances of each case, particularly the extent to which deliberation is possible. In some circumstances, deliberate indifference will be sufficient. In others, it will not." Sanford v. Stiles, 456 F.3d 298, 310 (3d Cir. 2006) (emphasis in original). "In a 'hyper-pressurized environment,' intent to cause harm is usually required. On the other hand, in cases where deliberation is possible and officials have the time to make 'unhurried judgments,' deliberate indifference is sufficient. Id. In Morse, the Third Circuit defined the required mental state as either "willful disregard for" or "deliberate indifference to" the safety of the plaintiff. Morse, 132 F.3d at 910. (citing Kneipp, 95 F.3d at 1208 n. 21).

Under this standard, the danger must have been foreseeable to the state actors and "the state's actions must evince a willingness to ignore" that foreseeable risk of danger. Id. As

9

Judge Sánchez determined in Smith, this Court also finds that the relevant conscience-shocking standard in this case is whether the School District "disregard[ed] a great risk of serious harm," however, even applying the "deliberate indifference" standard, Macias nonetheless fails to establish a genuine issue of material fact that the School District's conduct was conscience-shocking. See Smith v. School Dist. of Philadelphia, No. 07-2080, 2009 WL 667455, *5 (E.D. Pa. March 10, 2009).

"[T]he environment created by the state actors must be dangerous; they must know it to be dangerous; and ... [they] must have been at least deliberately indifferent." Johnson v. Dallas Indep. Sch. Dist., 38 F.3d 198, 201 (5th Cir.1994), *cert. denied,* 514 U.S. 1017, 115 S.Ct. 1361, 131 L.Ed.2d 218 (1995). In the present case, it is not disputed that Ward was suspended from Allen after he smacked Macias in the head on February 26, 2014, while in the hallway at Allen. Fritz called Macias's parents to come pick him up from Allen to ensure that Macias would not be harmed by Ward after school had ended. Fritz investigated the incident, reported it in the Sapphire system, and notified the police.

On March 4, 2014, Macias met with Fritz to discuss alleged threats made by Ward to Macias via Facebook. Fritz continued his investigation of the alleged threats by asking to see screen shots of Macias's Facebook account and contacting Macias's mother. The Third Circuit has held that "the state's actions must evince a willingness to ignore a foreseeable danger or risk. Of course, the notion of deliberate indifference contemplates a danger that must at least be foreseeable." Morse, 132 F.3d at 910. Fritz investigated the alleged threats made by both Ward and Macias. Between the time of the alleged threats and the attack at issue, it can be said that Fritz falls within the "unhurried judgment" category and would have had to have acted with deliberate indifference to the situation. Assuming, however, that Fritz's "actions rose to the level

10

of negligence, merely negligent acts cannot support a claim under the state-created danger theory." Id. at 911. We conclude that Fritz did not act with deliberate indifference. Initially, we note that he punished Ward for his violent attack on Macias on February 26, 2014. Fritz appropriately suspended Ward and reported the incident to the police. Fritz also called Macias's parents to pick him up to ensure Macias would not be attacked after school. In the subsequent days, when both Macias and Ward accused each other of threating violence towards one another, Fritz appropriately investigated and warned Ward of the consequences if the alleged behavior continued. This Court finds that Fritz did not act with deliberate indifference because Fritz, in his role of Assistant Principal, punished Ward for his actions and actively investigated the threat claims between Macias and Ward. Therefore, it cannot be said that Fritz was a casual observer, who acted with deliberate indifference, which led Ward and the other individual defendants to harm Macias.

**Prong Three: Relationship**

With respect to the third element, Macias must prove that "a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions." Bright, 443 F.3d at 281 (citation and internal quotation marks omitted). The relationship requirement "contemplates some contact such that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense." Kneipp, 95 F.3d at 1209 n. 22. In this matter, Macias avers that he was a member of a discrete class of persons as one of the students who attended Allen, who was subject to harm as a result of the School District's actions. See Gremo, 363 F.Supp.2d at 789 (concluding the plaintiff was a member of a discrete class of persons, namely, the students who attended the plaintiff's high school, who were subjected to

potential harm as a result of the state's actions). This Court, as did Judge Sánchez in Smith, concludes that Macias's attendance at Allen constituted a relationship between him and the School District such that he would be a foreseeable victim of an alleged danger created by the School District. See Smith, 2009 WL 667455, at *5.

### Prong Four: The affirmative act

The fourth prong of the state created danger test is the most difficult prong to prove because of the "inherent difficulty in drawing a line between an affirmative act and a failure to act." L.R. v. Sch. Dist. of Philadelphia, 836 F.3d 235, 242 (3d Cir. 2016). Plaintiff must show that the state used its authority in an affirmative way to place the plaintiff in danger. See Bridges ex rel. D.B. v. Scranton Sch. Dist., 66 F. Supp. 3d 570, 583 (M.D. Pa. 2014), aff'd, 644 Fed. Appx. 172 (3d Cir. 2016) (unpublished) ("Plaintiffs are unable to satisfy the fourth element because there was no affirmative action by the [school district] which made [plaintiff] more vulnerable than he would have been had the District done nothing at all."); see also Bright, 443 F.3d at 282 ("we have never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised"). An affirmative act by the state is essential for any state-created danger claim to survive a summary judgment. This Court can find no affirmative act committed by the School District, as argued by Macias, which placed Macias in more danger than had the School District not acted at all. Bright *supra*.

First, Macias argues that because Fritz failed to annotate a report of continued harassment by Ward, after March 4, 2014, in Allen's Sapphire system, he affirmatively placed Macias in harm's way. The plaintiff, incorrectly, takes what amounts to an omission and turns it into an affirmative act. The rule is plainly spelled out in Bright and requires that "a state actor

12

*affirmatively* use[] his or her authority in a way that create[s] a danger to the citizen or that render[s] the citizen more vulnerable to danger than had the state not acted at all." 443 F.3d at 281. (emphasis added). Here, Macias argues that because the School District did nothing to document alleged threats by Ward, it affirmatively acted to place the plaintiff in danger. This reasoning is contrary to this Court's precedent. Id. at 282 ("[l]iability under the state-created danger theory is predicated upon the states' *affirmative acts* which work to the plaintiffs' detriments in terms of exposure to danger.") (quoting D.R. by L.R. v. Middle Bucks Area Vo. Tech. School, 972 F.2d 1364, 1374 (3d Cir.1992) (*en banc*) (emphasis added).

Macias, incorrectly cites to Morse, "[w]hether the School's influence is properly characterized as an affirmative act or an omission is not determinative" as the standard for the fourth prong. 132 F.3d at 915. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008) (Plaintiffs must show "an affirmative action, rather than inaction or omission"). Fritz documented the March 4, 2014 meeting with Macias in Sapphire but did not document the continued alleged threats by Ward to Macias in the following days. On March 5, 2014, Fritz warned Ward that if the alleged threats were true or future threats were made, Ward could be pressed with formal charges of harassment. Fritz's actions likely made Macias safer because Ward was put on notice that formal charges could be brought against him, rather than continued annotations in the Sapphire system. Irrespectively, even if Fritz had not warned Ward about the threats, the lack of an annotation in the Sapphire system would be considered an omission or the equivalent to if he had not acted at all. See Morrow v. Balaski, 719 F.3d 160, 178 (3d Cir. 2013), as amended (June 14, 2013) (declining to hold, "that a school's alleged failure to enforce a disciplinary policy is equivalent to an affirmative act under the circumstances here.") In Morrow,

13

the Court rejected the idea that a school administrator not using his or her authority to take disciplinary action is an affirmative act and stated,

> [t]he dissent argues that Defendants' failure to expel Anderson constitutes an affirmative "exercise of authority" that contributed to the danger the Morrows faced, thereby triggering a duty to protect. Under this reasoning, however, every decision by school officials to use or decline to use their authority, disciplinary or otherwise, would constitute affirmative conduct that may trigger a duty to protect.

Id. at 178.

Second, Plaintiff tries to equate an issue of gross insubordination, between a teacher and Ward, where nobody was physically harmed, with aggravated assault against a fellow student. Plaintiff believes that because no disciplinary action was taken following Ward's altercation with a teacher on March 4, 2014, the door was left wide open for the students to attack whomever they pleased because they would suffer no consequences. See Gayemen v. Sch. Dist. of City of Allentown, 16-4367, 2017 WL 4547129, at *3 (3d Cir. Oct. 12, 2017) (rejecting the argument that "inexplicable delay" by authorities "emboldened" a perpetrator, because "what is alleged to have created a danger was the failure of the defendants to utilize their state authority, not their utilization of it") (quoting Bright, 443 F.3d at 284).

Even if the Court were to accept Macias's reasoning, it would still be the equivalent of inaction by the School District or not using their authority to take disciplinary action, not an affirmative act by the state. See Morrow *supra*. Furthermore, when Ward accosted Macias on February 26, 2014, Ward was suspended by the School District and the incident was reported to the police. Regardless of the inaction to the teacher incident, it cannot be said that Ward thought there would be no repercussions for assaults on students when he had already been disciplined for a similar assault against a student.

Next, with respect to the claim of concealment, Macias argues that the School District tried to conceal the acts of Ward "by actively investigating, warning Ward with a line in the sand and allowing Ward to cross it without discipline made Macias more vulnerable," but fails to elaborate on any details to a conspiracy by the School District to conceal Ward's acts. Macias claims that the school tried to conceal incidents related to Ward's past, while proffering no evidence of a conspiracy to conceal the records or incidents. Rather, Macias only offers a conclusory statement: "[t]his is bolstered by the fact that the School [District] not only ignored the concrete information they received about prior violence, but also tried to bury that information." See Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex, 477 U.S. at 325) (the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion). See also Smith v. School Dist. of Philadelphia, No. 07-2080, 2009 WL 667455, *4 (E.D. Pa. March 10, 2009) (citing In re Phillips Petroleum Secs. Litig., 881 F.2d 1236, 1243 (3d Cir.1989) ("[A] plaintiff may not simply rest upon his bare allegations to require submitting the issue to a jury; rather, he must present 'significant probative evidence tending to support the complaint.'") (citations omitted).

Macias has presented no evidence that the School District attempted to hide or conceal Ward's disciplinary record which led to Macias being placed in a more dangerous situation. From the record, the Court can surmise that: (1) On February 26, 2014, Ward assaulted Macias and received an out-of-school suspension and the incident was reported to the police; (2) Both Ward and Macias complained to Fritz about threats on Facebook, to which Ward was warned that formal harassment charges could be brought if proven; (3) On March 4, 2014, Ward had a verbal altercation with a teacher over a cell phone and when the teacher went to grab the

15

phone, he was pulled towards Ward. This incident was documented in the Sapphire system but no action was taken; (4) On March 17, 2014, Ward, White, and Gavornik assaulted Macias, which led to out-of-school suspensions, expulsion, and referrals to the police. From these facts, the Court cannot construe that there was some sort of greater conspiracy to cover up and conceal Ward's action. When Ward assaulted a student, he was appropriately punished by the School District. This Court is not persuaded by Macias's argument, that Macias was more vulnerable to Ward because of an alleged, concerted effort on behalf of the School District to hide Ward's record. Furthermore, even if there had there been some sort of effort by the School District to conceal Ward's record, Ward would have likely been unaware of it.

Finally, Macias argues that "the failure of the School District to take appropriate steps to address the individual defendants' violence placed Macias in a more dangerous position." Again, this thinking is inapposite to the meaning attributed to the fourth prong in Bright. There has to be some action by the state that places the plaintiff in danger. See Sanford v. Stiles, 456 F.3d 298, 311–312 (3d Cir. 2006) (holding that, where a high school guidance counselor failed to evaluate and report the sincerity of a student's comment to another student that he wanted to kill himself, she had not committed an affirmative act but rather failed to prevent his death). Perhaps, if the School District instructed its security officers not to help Macias if he was in danger or if the School District deliberately placed Ward next to Macias in every class, Macias may have met the threshold of the fourth prong, but that is not the case here. See L.R. v. Sch. Dist. of Philadelphia, 836 F.3d 235 (3d Cir. 2016) (holding that a teacher made affirmative use of authority that created or increased danger to student by releasing student from classroom to unidentified adult). From the record, it appears that only Ward had a history of violence, which resulted in an out-of-school suspension and referral to the police. It is clear from

the facts that the School District put Ward on notice, that violent acts would be met with repercussions.

Like in Morrow, Macias "attempts to morph passive inaction into affirmative acts. However, merely restating the Defendants' inaction as an affirmative failure to act does not alter the passive nature of the alleged conduct." 719 F.3d at 179. Therefore, since Macias has not shown that the School District committed an affirmative act that placed him in danger, the theory of a state-created danger must fail. Accordingly, this Court will grant summary judgment to the Defendant.

## **Monell Claim**

In addition to the state-created danger theory, Macias avers that the School District may be held liable under Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In order to hold the School District liable under this theory, Macias must demonstrate that there was a constitutional violation and that the violation was caused by the School District's policy or custom. Bridges ex rel. D.B. v. Scranton Sch. Dist., No. 14-4565, 2016 WL 953003, at *5 (3d Cir. Mar. 14, 2016) (citing Monell, 436 U.S. at 690-691). This Court must first determine "whether plaintiff's harm was caused by a constitutional violation." Collins v. City of Harker Heights, 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Because this Court has already ruled against Macias on this issue, judgment must be entered in favor of the School District. See Bridges, 2016 WL 953003, at *5 (Appellants cannot recover from the School District under Section 1983 for a failure to train because there was no underlying constitutional violation); Mohammed v. Sch. Dist. of Phila., 355 F. Supp. 2d 779, 787 (E.D. Pa. 2005), aff'd, 196 Fed. Appx. 79 (3d Cir. 2006) (Because the School District and its employees did not create the danger that resulted in [plaintiff]'s harm, any failure to protect

[him] from the misguided punch was not an infringement on his constitutional rights.) Because there has been no constitutional harm, the School District cannot be liable under Section 1983.

## **Conclusion**

Defendant Allentown School District's Motion for Summary Judgment will be granted. An Order follows.